UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
                                   :

FOSTER WHEELER ENVIRONMENTAL     :
CORP.,
                                    :

                    Petitioner,   :

                                    :

          -v-                        :

                                    :

ENERGX TN, LLC, and ENERGX, LLC,    :

                                    :

                  Respondents. :
                                    :
---------------------------------------------------------X

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/13/14

No. 13 Civ. 1178 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

This is an action pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, to confirm a Final Arbitration Award ("Final Award") dated December 6, 2012. Before the Court are the petition of Foster Wheeler Environmental Corporation to confirm the Final Award and the cross-petition of EnergX TN, LLC ("ETN"), and EnergX, LLC ("EnergX"), (collectively "Respondents"), to vacate or, in the alternative, modify the Final Award. The underlying contract dispute relates to an agreement pursuant to which EnergX purchased a United States Department of Energy ("DOE") contract from Foster Wheeler. The arbitrator determined that Respondents are required by that agreement to pay Foster Wheeler $250,000 plus prejudgment interest. For the reasons that follow, the Court grants Foster Wheeler's petition, denies Respondents' cross-petition, and confirms the Final Award.

## I.    Background

In 1998, DOE awarded Foster Wheeler a contract ("the TN Contract") to construct and operate a transuranic waste processing center in Oak Ridge, Tennessee. (Parties' Statement of Stipulated Facts ¶ 2.) Between 2002 and 2006, EnergX supplied key personnel to the project, and, in April 2006, Foster Wheeler designated EnergX the managing contractor of the project.

(Id. ¶¶ 4-6.)   ETN, a limited liability company of which EnergX is the sole member, also performed work on the project under a subcontract.  (Id. ¶¶ 7-8.)

On January 15, 2008, pursuant to a purchase agreement ("the Purchase Agreement"), EnergX purchased Foster Wheeler's "right, title and interest in the . . . TN Contract."  (Id. ¶¶ 10-11.)  ETN thus formally replaced Foster Wheeler on the TN Contract. (Id. ¶ 17.)  Among other things, the Purchase Agreement provided that if "EnergX is awarded any subsequent contracts with DOE in whole or in part for the operation of the [transuranic waste processing center]," EnergX must make a lump-sum payment of $250,000 to Foster Wheeler.  (Purchase Agreement § 1.1(b).)

On April 2, 2008, in anticipation of the completion of the TN Contract, DOE issued a Request for Proposal for a new contract to operate the transuranic waste processing center ("the Prime Contract").  (Parties' Statement of Stipulated Facts ¶¶ 18-19.)  Because the Prime Contract was restricted to small businesses, EnergX was ineligible to bid on it.   (Id. ¶¶ 20-21.) Accordingly, on April 16, 2008, EnergX entered into a Teaming Agreement with Wastren Advantage, Inc. ("WAI"), pursuant to which WAI submitted a proposal featuring itself as the prime contractor and EnergX as a subcontractor.  (Id. ¶¶ 22-23; Dkt. 14-4 at 7.)  WAI was awarded the Prime Contract on October 17, 2009, and it assumed operational control of the facility on January 17, 2010.  (Id. ¶¶ 24-25.)  On March 29, 2010, WAI and EnergX executed a subcontract to perform technical and administrative work at the facility ("the Subcontract"). (Resps.' Statement of Undisputed Facts ¶ 19.)  The Subcontract has been amended over time. (Id.)

Following the award of the Subcontract to EnergX, Foster Wheeler made a demand for payment of the $250,000 which Respondents refused to pay.  (Pet'r's Mem. of Law 7.)  The parties submitted their dispute to arbitration, where Foster Wheeler claimed that the Subcontract

triggered Respondents' obligation to make the lump-sum payment provided for in the Purchase Agreement.  (Final Award 1; Pet'r's Mot. for Summ. J. 2.)  The arbitrator issued a Final Award on December 6, 2012, concluding that "the subcontract between EnergX and WAI triggers the payment Provision of section 1.1(b)" and awarding $250,000 to Foster Wheeler.  (Id. at 7.)  He also awarded prejudgment interest from October 17, 2009 until the date of the Final Award, totaling $70,607.  (Id.)

## II.     Applicable Legal Standard

"Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court."  D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (internal quotation marks omitted).  A party seeking to vacate an arbitration award "must clear a high hurdle.  It is not enough . . . to show that the [arbitrator] committed an error—or even a serious error."  Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 671 (2010).  "It is only when [an] arbitrator strays from interpretation and application of the agreement and effectively dispense[s] his own brand of industrial justice that his decision may be unenforceable."  Id. (alterations in original) (internal quotation marks omitted).

"With respect to contract interpretation, this standard essentially bars review of whether an arbitrator misconstrued a contract."  T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 339 (2d Cir. 2010).  Thus, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, a court's conviction that the arbitrator has committed serious error in resolving the disputed issue does not suffice to overturn his decision."  ReliaStar Life Ins. Co. of N.Y. v. EMC Nat. Life Co., 564 F.3d 81, 86 (2d Cir. 2009) (internal quotation marks omitted); see also Companhia de Navegacao Maritima Netumar v. Armada Parcel Serv., Ltd., No. 96 Civ. 6441 (PKL), 2000 WL 60200, at *6 (S.D.N.Y. Jan. 25,

2000) ("[I]n almost every instance where a court has been asked to review an arbitration award, the arbitrator's final decision has been left undisturbed."). "[T]he court's function in confirming or vacating an arbitration award is severely limited. If it were otherwise, the ostensible purpose for resort to arbitration, i.e., avoidance of litigation, would be frustrated." Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp., 274 F.2d 805, 808 (2d Cir. 1960).

### III.   Discussion

#### A.   Manifest Disregard of the Law and the Contract

Respondents argue that the arbitrator acted in manifest disregard of the law and the Purchase Agreement. (Resps.' Mem. of Law 8-11.) They assert that, under the clear and unambiguous meaning of the contract, the lump-sum payment is only triggered by the award of a contract to which DOE and EnergX are both parties. (Id. at 9-10.) The lump-sum payment, they contend, was thus not triggered by the Subcontract between EnergX and WAI. (Id.) Respondents bear the burden of demonstrating that the arbitrator manifestly disregarded the law or the contract. See Folkways Music Publishers, Inc. v. Weiss, 989 F.2d 108, 111 (2d Cir. 1993) ("[T]he party challenging the award[] bears a heavy burden of proof.").

"[A]n arbitral decision may be vacated when an arbitrator has exhibited a 'manifest disregard of the law.'" Westerbeke Corp. v. Daihatsu Motor Co., Ltd., 304 F.3d 200, 208 (2d Cir. 2002) (Sotomayor, J.). Manifest disregard of the law requires "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law." Id. (quoting Saxis S.S. Co. v. Multifacs Int'l Traders, Inc., 375 F.2d 577, 582 (2d Cir. 1967)). In this Circuit there is a two-prong test to determine whether an arbitrator manifestly disregarded the law. "[A] court must find both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." Halligan v.

Piper Jaffray, Inc., 148 F.3d 197, 202 (2d Cir. 1998).  The same standard governs a claim that an arbitrator manifestly disregarded the contract terms.  See Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc., 126 F.3d 15, 25 (2d Cir. 1997).  The arbitrator in this case did not manifestly disregard the law or the contract.

The contract provision at issue reads as follows:

> [I]f and to the extent EnergX is awarded any subsequent contracts with DOE in whole or in part for operation of the [transuranic waste processing center] beyond the TN Contract (an "Additional Contract"), then EnergX shall pay $250,000 to [Foster Wheeler] in a lump sum payment within 20 days of the execution of such Additional Contract.

(Purchase Agreement § 1.1(b).)  The question of contract interpretation presented to the arbitrator was thus whether EnergX had been "awarded any subsequent contracts with DOE in whole or in part."  (Id.; Pet'r's Mot. for Summ. J. 8; Resps.' Mot. Summ. J. 6)  He concluded that "[a] contract with DOE means one that DOE is associated with" and that the phrase "in part" covers subcontracts as well as prime contracts.  (Final Award 6-7.)  Accordingly, the arbitrator found that "the subcontract between EnergX and WAI triggers the payment Provision of section 1.1(b)."  (Id. at 7.)

As noted above, it is not this Court's role to determine whether it agrees with that interpretation.  Instead, the Court asks only "if there is a barely colorable justification for the outcome reached."  Banco de Seguros del Estado v. Mut. Marine Office, Inc., 344 F.3d 255, 260 (2d Cir. 2003) (internal quotation marks omitted).  The arbitrator's interpretation in this case meets that standard.

As an initial matter, the arbitrator gave effect to the phrase "in whole or in part" by interpreting it to mean that the provision covers subcontracts, as well as prime contracts.  (Final Award 6-7.)  "Under New York law an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided

5

if possible.  Rather, an interpretation that gives a reasonable and effective meaning to all terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect." <u>Galli v. Metz</u>, 973 F.2d 145, 149 (2d Cir. 1992) (alteration in original) (citation and internal quotation marks omitted); <u>see also</u> <u>Loctite VSI, Inc. v. Chemfab N.Y., Inc.</u>, 701 N.Y.S.2d 723, 725 (App. Div. 2000) ("[C]ourts should adopt an interpretation of a contract which gives meaning to every provision of the contract, with no provision left without force and effect."); <u>Browning-Ferris Indus. v. Cnty. of Monroe</u>, 478 N.Y.S.2d 428, 430 (App. Div. 1984) ("[A] contract should be interpreted to give meaning and effect to every provision."); <u>DBT Gmbh v. J.L. Min. Co.</u>, 544 F. Supp. 2d 364, 377 (S.D.N.Y. 2008) (under New York law there is a "fundamental rule that a contract should be interpreted in a manner that gives meaning to every provision").  Although Respondents argued in the arbitration proceedings that the phrase "in whole or in part" extends coverage of the provision to contracts that DOE divides into pieces (Final Award 6), the arbitrator's interpretation of the language provides a reasonable alternative interpretation.  <u>See</u> <u>Yusuf</u>, 126 F.3d at 25 ("Interpretation of [a] contract term[] is within the province of the arbitrator and will not be overruled simply because we disagree with that interpretation.").

In addition, contrary to Respondents' contention, the arbitrator's interpretation does not manifestly disregard the plain meaning of the phrase "with DOE."  "Under New York law, 'words and phrases [of a contract] . . . should be given their plain meaning.'" <u>Progress Bulk Carriers v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc.</u>, 939 F. Supp. 2d 422, 428 (S.D.N.Y. 2013) (alterations in original) (quoting <u>ReliaStar</u>, 564 F.3d at 88).  It does not manifestly disregard the plain meaning of the contractual language to say that EnergX was "awarded [a] subsequent contract[] with DOE," considering that EnergX's role on the Subcontract it was awarded required it to perform work at a facility owned by DOE.  At the very least, that constitutes a "barely colorable justification." <u>See</u> <u>Banco de Seguros</u>, 344 F.3d at 260.

6

Finally, the arbitrator appropriately considered the circumstances at the time of contract formation and the parties' expectations.  Under New York law, "the essence of contract interpretation . . . is to enforce a contract in accordance with the true expectations of the parties in light of the circumstances existing at the time of the formation of the contract." VTech Holdings Ltd. v. Lucent Techs., Inc., 172 F. Supp. 2d 435, 441 (S.D.N.Y. 2001) (quoting Reiss v. Fin. Performance Corp., 715 N.Y.S.2d 29, 34 (App. Div. 2000)).  To determine the parties' intent, the Court should consider "the reasonable expectation and purpose of the ordinary businessperson in the factual context in which the terms of art and understanding are used." Eastman Kodak Co. v. STWB, Inc., 232 F. Supp. 2d 74, 91 (S.D.N.Y. 2002) (quoting Uribe v. Merchants Bank of N.Y., 693 N.E.2d 740, 743 (N.Y. 1998)).

The arbitrator concluded that "the parties intended that if EnergX, then the incumbent, could use that position to get another contract, [Foster Wheeler] should share by receiving an additional $250,000."  (Final Award 6.)  Although he recognized that the parties had failed to anticipate that DOE would limit the Prime Contract to small businesses, he also found that EnergX, nonetheless, "used its position as incumbent to team with WAI and thus to enable itself to reap substantial economic benefit."  (Id.)  The arbitrator further noted that the estimated value of the Prime Contract awarded to WAI was approximately $65 million, and EnergX earned approximately $12 million to $15 million as a subcontractor on the project.  (Id. at 5.) Accordingly, he found that Respondents were required to compensate Foster Wheeler.

In sum, because the arbitrator was plainly attempting to "constru[e] or apply[] the contract," he neither manifestly disregarded the law nor the contract at issue.  See ReliaStar, 564 F.3d at 86; I/S Stavborg v. Nat'l Metal Converters, Inc., 500 F.2d 424, 432 (2d Cir. 1974) (confirming arbitration award despite the fact that it was "based on a clearly erroneous interpretation of the contract").

7

### B.      Scope of Arbitrator's Authority

Respondents also argue that the Final Award should be vacated under 9 U.S.C. § 10(a)(4) because the arbitrator "imperfectly executed his role by administering his own brand of justice." (Resps.' Mem. of Law 6, 11-12.)   In doing so, however, they misinterpret the meaning of that statutory provision.   In applying § 10(a)(4), the Court "focuses on whether the arbitrator[] had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." Westerbeke, 304 F.3d at 220 (quoting DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 824 (2d Cir. 1997)).   "[O]nce we determine that the parties intended for the arbitration panel to decide a given issue, it follows that the arbitration panel did not exceed its authority in deciding that issue—irrespective of whether it decided the issue correctly." T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 346 (2d Cir. 2010) (internal quotation marks omitted); see also Jock v. Sterling Jewelers Inc., 646 F.3d 113, 122-23 (2d Cir. 2011).

Respondents have not argued—either to this Court or to the arbitrator—that interpretation of the contract fell outside the bounds of what the parties agreed to arbitrate.   (See generally Resps.' Mem. of Law; Resps.' Mot. for Summ. J.)   Moreover, given that the Purchase Agreement required arbitration of "[a]ll disputes arising out of this Agreement," such an argument would have been meritless.   (Purchase Agreement § 10.7.)   In McDonnell Douglas Finance Corp. v. Pa. Power & Light Co., 858 F.2d 825, 832 (2d Cir. 1988), the Second Circuit recognized a distinction "between 'broad' [arbitration] clauses that purport to refer all disputes arising out of a contract to arbitration and 'narrow' clauses that limit arbitration to specific types of disputes."   It held that if, as is the case here, the "clause is a broad one, then . . . any subsequent construction of the contract and of the parties' rights and obligations under it are within the jurisdiction of the arbitrator." Id.   Accordingly, the arbitrator did not exceed the scope

8

of his authority when he interpreted the contract.

## C.  Award of Prejudgment Interest

Respondents assert, in the alternative, that the Court must modify or correct the award of prejudgment interest pursuant to 9 U.S.C. § 11(a), because it contains "an evident material mistake." (Resps.' Mem. of Law 13.)  The arbitrator awarded interest starting the day the Prime Contract was awarded to WAI, but Respondents claim the interest should run from the day that EnergX officially became a subcontractor to WAI.  (Id.)[1]

Section 11(a) authorizes a district court to modify or correct an arbitration award "[w]here there was . . . an evident material mistake in the description of any person, thing, or property referred to in the award."  This authority, however, is "strictly limited."  T.Co Metals, 592 F.3d at 345; see also Hyle v. Doctor's Assocs., Inc., 198 F.3d 368, 370 (2d Cir. 1999).  The mistake must be one "that is apparent on the face of the record and would have been corrected had the arbitrator known [of it] at the time."  4 Thomas H. Oemke with Joan M. Brovins, Commercial Arbitration § 132:4 (3d ed. 2013); see also AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc., 508 F.3d 995, 999 (11th Cir. 2007) (holding that under § 11(a) "[t]o make a 'mistake' is to 'understand wrongly' or to 'recognize or identify incorrectly.'").  Any mistake must be "evident" and must "appear[] in a description 'in the award.'"  AIG Baker, 508 F.3d at 999; cf. Al-Azhari v. Merit Capital Assocs., Inc., No. 99 Civ. 9795 (LAK), 2000 WL 151914, at *2 (S.D.N.Y. Feb. 14, 2000) ("In relevant part, the Federal Arbitration Act permits modification of an arbitration award only where there was an 'evident material miscalculation of figures' that is clear on the face of the award or can be clearly inferred therefrom.").  Furthermore, § 11 does not authorize the Court to correct a mistake if such correction would alter

---

[1]  Although Section 1.1(b) of the Purchase Agreement provides that "EnergX shall pay $250,000 . . . within 20 days of the execution of such Additional Contract," Respondents have not argued that interest should have run from twenty days after the subsequent contract was awarded, rather than from the award date itself.

the substantive disposition.  See Fellus v. Sterne, Agee & Leach, Inc., 783 F. Supp. 2d 612, 619 (S.D.N.Y. 2011) ("Section 11(a) does not permit modification where the award is 'not the result of some careless or obvious mathematical mistake, but rather the disposition of a substantive dispute that lays at the heart of the arbitration.'"); see also Companhia de Navegacao Maritima Netumar v. Armada Parcel Serv., Ltd., No. 96 Civ. 6441 (PKL), 2000 WL 60200, at *6-7 (S.D.N.Y. Jan. 25, 2000).

It is simply not clear from the face of the Final Award that the arbitrator used the date of the Prime Contract, rather than the Subcontract, because of a careless mistake.  Rather, it is quite possible that the arbitrator relied on the Prime Contract award date because of the way he interpreted the contractual provisions.  He may have believed that the Teaming Agreement between EnergX and WAI entitled EnergX to receive the Subcontract once WAI had received the Prime Contract.[2]  Based on such a view, the arbitrator might have concluded that prejudgment interest should run from the date the Prime Contract was awarded because, as a practical matter, that is when EnergX secured the Subcontract.  See Fed. Commerce & Nav. Co. v. Kanematsu-Gosho, Ltd., 457 F.2d 387, 389-90 (2d Cir. 1972) ("Overly technical judicial review of arbitration awards" is not appropriate, in part, because "judicial intervention into arbitration substitutes the rule of a court for that of '[persons] familiar with the practical intricacies of their type of relationship and disposed to give weight to nonlegal factors like business ethics.'").

Whether the Court agrees with that interpretation is not at issue, because § 11(a) does not

---

[2] The April 16, 2008 Teaming Agreement between EnergX and WAI provides that, "[i]n the event the Prime Contract is awarded to WAI by the Customer, WAI and EnergX . . . shall commence immediate good-faith negotiations to execute a mutually acceptable Subcontract . . . ."  (Teaming Agreement Art. IX § 9.1, Rosen Decl. Ex. 3-2.)  It also provides that, "[i]n consideration of subcontracting the above areas to EnergX, EnergX agrees to support WAI's bid efforts by providing additional past performance as may be identified prior to submission of the proposal to ensure the most likely team win."  (Id. § 9.2.)  Based on the latter provision, the arbitrator could have inferred that, by the time the Prime Contract was awarded, EnergX had already provided the consideration for receiving the Subcontract by assisting WAI prepare the successful proposal.

authorize a court to modify an arbitration award simply because it believes the arbitrator incorrectly interpreted a contract. See, e.g., Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp., 274 F.2d 805, 808 (2d Cir. 1960) ("The statutory provisions, 9 U.S.C. §§ 10, 11, in expressly stating certain grounds for either vacating an award or modifying or correcting it, do not authorize its setting aside on the grounds of erroneous finding of fact or of misinterpretation of law."). Because Respondents have not met their burden of showing that the arbitrator's award of prejudgment interest was based on an evident material mistake, their request to correct or modify the Final Award is denied.

### IV.    Conclusion

For the foregoing reasons, Foster Wheeler's petition to confirm the Final Award is granted and Respondents' cross-petition to vacate or modify the Final Award is denied. The Clerk of Court is respectfully directed to close the motion at docket number 4 and to close the case.

SO ORDERED.

Dated:      March 13, 2014
            New York, New York

Ronnie Abrams
United States District Judge

11